Below is a Memorandum Decision of the Court.

*Mary Jo Heston*
**Mary Jo Heston**
**U.S. Bankruptcy Judge**
(Dated as of Entered on Docket date above)

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON AT TACOMA

In re:

MAUST TRANSPORT, INC.,

Debtor.

Case No. 14-40595

**MEMORANDUM DECISION**

This matter is before the Court on the Application for Allowance of Administrative Expense – Substantial Contribution Claim of Attorneys for J D Logistics ("Application"), filed by J D Logistics, Inc. ("JDL"). The Chapter 7 Trustee ("Trustee") filed the only response to the Application. After considering the pleadings, evidence, and arguments presented, the Court's findings of fact and conclusions of law are as follows.

## BACKGROUND

The underlying facts are not in dispute. This Chapter 7 case was commenced as an involuntary proceeding on February 7, 2014. JDL was one of the petitioning creditors. At that time, the Debtor and an affiliate, Maust Transportation Services, LLC ("MTS"), were in state court receivership proceedings. According to JDL, the purpose of the receiverships was to pay the allegedly secured debt owed to Columbia State Bank ("Columbia Bank"). On May 6, 2014,

the Court entered a Stipulated Order for Relief under Chapter 7 and Judgment Granting Involuntary Petition.

At the time of the involuntary petition, JDL was represented by Nagler Law Group, P.S. ("Nagler"), who served as counsel of record, and Sheppard, Mullin, Richter & Hampton LLP ("SMRH"), who evaluated and researched the grounds for filing the involuntary proceeding. On April 3, 2014, Donald A. Bailey and the firm of Shafer & Bailey LLP ("Bailey") filed a Notice of Appearance and substituted for Nagler as counsel for JDL and the other petitioning creditors on April 8, 2014.

Prior to filing the involuntary petition, JDL believed, based on the advice of SMRH, that a case could be made to avoid Columbia Bank's security interest in the Debtor's assets on a fraudulent transfer theory and to recover the assets taken from the Debtor by other related entities. After the filing, Bailey conducted Rule 2004[1] examinations to determine the financial condition of the Debtor and discover potential causes of action that the estate might have. SMRH performed the bulk of the financial and legal analysis. In early 2015, Bailey and SMRH met with the Trustee, Debtor's counsel, and Columbia Bank and its counsel to lay out the case for a fraudulent transfer claim against Columbia Bank and pursue a negotiated resolution. The parties were unable to reach a settlement.

The Trustee represents that he was hesitant to pursue the fraudulent transfer claim because of the substantial legal expense and risk that the estate would not prevail and recover on the claim. Such concerns also extended to obtaining and reviewing key records held by

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

MEMORANDUM DECISION - 2
 Case 14-40595-MJH    Doc 167    Filed 04/03/18    Ent. 04/03/18 13:22:57    Pg. 2 of 19

Columbia Bank. Bailey, on behalf of JDL, agreed to advance the cost for copying and scanning the Columbia Bank records necessary to establish a claim, and the Trustee indicated he would support an application for an administrative cost of this expense, which totaled $6,748.01. The Trustee also determined that the best option to pursue the fraudulent transfer claim was to employ a firm willing to undertake the litigation on a contingency fee basis. Despite the Trustee's efforts, he was not successful in finding a firm willing to take on the claim on a contingency. Bailey assisted the Trustee in locating a firm, Williams, Kastner & Gibbs PLLC, which was appointed to represent the Trustee in the adversary proceeding commenced against Columbia Bank and what are collectively referred to as the "Cold Locker Entities" on May 5, 2016, Adv. No. 16-04059. The Order Approving Employment of Special Counsel was entered on July 21, 2016. On September 27, 2017, the Court approved a compromise of the adversary proceeding for $200,000. The settlement amount was subject to a one-third contingency fee plus costs, for a total of $69,169.43, resulting in net funds to the estate of $130,830.57 as well as the elimination of Columbia Bank's deficiency claim in the approximate amount of $2,984,159.33.

According to the Trustee, the bankruptcy estate currently holds the total sum of $183,218.01. These funds were received from the fraudulent claim settlement, which is the basis for a portion of the JDL administrative claim requests ($130,830.57), the Primal Pets accounts receivable ($40,000), and the compromise and sale of equipment to JDL ($15,000).[2] There are no other assets to be liquidated. The Trustee also represents that statutory trustee fees are approximately $18,000, estimated costs are approximately $950, and the court

---

[2] These numbers taken from the Trustee's Response (ECF No. 164) actually total $185,830.57, not $183,218.01. The Court is unclear where the discrepancy comes from, but for purposes of this Application the difference is irrelevant.

appointed CPA is owed approximately $2,000 for the preparation of tax returns.  The Internal Revenue Service has filed a priority claim of $111,751.07, and the California Franchise Tax Board has filed a priority claim for $18,081.70.  JDL has filed an unsecured claim for $189,577.04, in addition to its request for an administrative expense claim.

On January 9, 2018, JDL filed its Application, seeking an administrative expense claim under 11 U.S.C. § 503(b) in the total amount of $111,857.50, for costs and fees incurred to: 1) institute the involuntary proceeding ($32,596.50) pursuant to § 503(b)(3)(A) and (b)(4); and 2) preserve, pursue, and investigate the fraudulent transfer claim that resulted in recovery for the estate ($79,261.01) pursuant to § 503(b)(3)(D) and (b)(4).  The Trustee filed a response, agreeing to an administrative expense claim for the copying costs of $6,748.01, but questioning whether the requested costs and fees are permitted under § 503(b)(3) and whether the administrative claim amounts sought are reasonable.  Specifically, the Trustee questioned whether some of the time expended by JDL's legal counsel in connection with the fraudulent transfer claim was duplicative of the efforts of the Trustee and Trustee's legal counsel.

At the hearing on February 27, 2018, the Court questioned whether all of the fees and costs requested by JDL are allowable as administrative expenses.  First, recognizing JDL's burden to establish an administrative expense claim, the Court requested that JDL address disputed billing entries through a declaration to be filed by March 13, 2018, or alternatively through an evidentiary hearing focusing on those entries related to obtaining legal counsel for the estate and briefing such counsel to induce them to accept the appointment under a contingency arrangement.  The Court also asked that counsel address the redacted entries related to pursuit of the involuntary petition in camera or otherwise.  On March 13, 2018, JDL filed a Supplemental Memorandum in Support of Administrative Expense – Substantial

Contribution Claim of J D Logistics ("Supplemental Memorandum"). While JDL voluntarily agreed to reduce its total administrative claim to $55,000, their supplemental submission did not address any particular billing entries included in its Application. The Trustee did not file an additional response, although was given until March 16, 2018, to do so.

**ANALYSIS**

I.  **Section 503(b) Generally**

The claimant has the burden of proving an administrative expense claim. Microsoft Corp. v. DAK Indus., Inc. (In re DAK Indus., Inc.), 66 F.3d 1091, 1094 (9th Cir. 1995). Bankruptcy courts generally are directed to strictly construe administrative expense requests in large part because allowance of such expenses reduces funds available for distribution to claims of pre-petition creditors. DAK Indus., 66 F.3d at 1094; In re United Educ. & Software, No. CC-05-1067-MaMeP, 2005 WL 6960237, at *4 (9th Cir. BAP Oct. 7, 2005).

Many decisions construing the appropriateness of allowance of an administrative expense, including this case, involve unique and specific facts that do not fall squarely within one of the enumerated categories of § 503(b). See Brendan Chisholm, Equity Will Rule Until Amendment in Section 503 Bankruptcy Administrative Expenses, 85 U. Cin. L. Rev. 553, 556-562 (2017) (setting forth a survey of decisions representing various approaches under § 503(b), including those cases utilizing "including" to allow for administrative expense claims based on the unique facts of the case: In re Harvey, No. 04-35576PM, 2006 WL 4481990 (Bankr. N.D. Md. Nov. 22, 2006); In re Pappas, 277 B.R. 171 (Bankr. E.D.N.Y. 2002); In re Zedda, 169 B.R. 605 (Bankr. E.D. La. 1994); In re Rumpza, 54 B.R. 107 (Bankr. D.S.D. 1985)). See also In re Health Trio, Inc., No. 09-34404-JGR, 2018 WL 539817, at *7, 10 (Bankr. D. Colo. Jan. 24, 2018); In re Sharkey, No. 17-11237, 2017 WL 5476486, at *8-9 (Bankr. E.D. Mich. Nov. 15,

2017). Congress's insertion of the term "including" into the introductory paragraph of § 503(b) (i.e., prior to the specifically identified categories of claims), which term by definition is not to be construed as a limitation (see § 102(3)), provides much needed flexibility to bankruptcy courts in dealing with such specific factual situations. In re Connolly N. Am., LLC ("Connolly"), 802 F.3d 810, 816 (6th Cir. 2015). Further it is universally accepted that the § 503(b) list of the types of administrative claims is not exhaustive and that the listed categories provides general guidance to courts as to certain types of allowable claims. See, e.g., Connolly, 802 F.3d at 816-17; In re Al Copeland Enters., 991 F.2d 233, 239 (5th Cir. 1993); In re Mark Anthony Constr., Inc., 886 F.2d 1101, 1106 (9th Cir. 1989). Despite this generally accepted overarching structure, several courts have circumscribed the types of allowed administrative claims by reading Congressional intent into the absence of statutory language allowing specific types of claims by relying on a variety of cannons of statutory construction including negative pregnant (inferring a negative from a positive) and *expressio unius est excluso alterius* (inferring an intention to make a statute's application restricted and limited to a specific list of examples). A review of the amendments to § 503(b) illustrates why such approaches in the absence of clear and unambiguous statutory language is both misguided and unnecessary, not to mention contrary to the intent of the non-limiting introductory use of the word "including" in § 503(b).

First, the 2005 amendments to § 503, which specifically prohibit certain insider retention bonus administrative claims, make it clear that Congress can and has removed the broad discretion granted to courts in § 503 where it deems the exercise of such discretion improper as to certain specific categories of administrative claims. See § 503(c)(1) (disallowing certain types of retention compensation to insiders).

Second, the 1994 amendments to § 503 adding subsection (b)(3)(F), which authorizes expenses for committee members of *official* Section 1102 committees, addressed the misguided construction of courts that had relied on the omission of a reference to official committees in § 503(b)(3)(D) which allowed expenses to be paid to members of *unofficial* committees to exclude payment of expenses to official committee members. See, e.g., In re Mason's Nursing Ctr., Inc., 73 B.R. 360, 362-63 (Bankr. S.D. Fla. 1987) (concluding that member of the official creditors' committee was explicitly denied compensation for any services under § 503(b)(3)(D)); In re Lyons Mach. Co., Inc., 28 B.R. 600, 602 (Bankr. E.D. Ark. 1983) (concluding that the language contained in § 503(b)(3)(D) specifically prohibited authorization of reimbursement of expenses incurred by the official creditors' committee). Such approaches are further unnecessary in light of the restrictive and conservative approach to the allowance of administrative expenses generally and the strict definition of terms such as "substantial contribution" under applicable caselaw.

## II. Discussion of Section 503(b) Provisions Implicated by JDL's Administrative Claims

JDL seeks fees and costs as administrative expenses under § 503(b)(3)(A), (B), (D), and § 503(b)(4):

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including-
>
> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—
>   (A) a creditor that files a petition under section 303 of this title;
>
>   (B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor;
>   . . .
>   (D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a

committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title;

. . .

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant . . . .

A.  Section 503(b)(3)(A)

Section 503(b)(3)(A) in combination with § 503(b)(4) grants creditors costs incurred in connection with filing an involuntary bankruptcy petition. In re Wind N' Wave, 509 F.3d 938, 941 (9th Cir. 2007). This section conclusively presumes that initiating an involuntary case is beneficial to creditors. Fees under § 503(b)(4) are subject to a reasonableness standard. Allowable fees are not limited to fees and costs spent on preparing and filing the petition, but can include fees for additional time spent on matters "directly related" to preparing and filing the petition. 4 Collier on Bankruptcy ¶ 503.10 (Richard Levin & Henry J. Sommer eds.,16th ed.). "This may include time spent contacting other creditors to join in the petition, legal and factual research regarding the grounds for filing the case and, if entry of an order for relief is contested by the debtor, litigating whether an order for relief should be entered." 4 Collier on Bankruptcy ¶ 503.10 (Richard Levin & Henry J. Sommer eds.,16th ed.). Under the majority view adopted by this Court, a petitioning creditor may not be awarded compensation under § 503(b)(3)(A) once the order for relief has been entered. In re Hovdebray Enters., 499 B.R. 333, 339 (Bankr. D. Minn. 2013).

The Trustee does not dispute that JDL is entitled to an administrative expense claim as a petitioning creditor for fees and costs incurred through the entry of the order for relief on May

6, 2014, within the parameters of § 503(b)(4). JDL seeks the following fees and costs incurred by legal counsel:

SMRH: $14,107

Nagler: $13,820

Bailey: $4,669.50.

The Court finds that all fees requested by SMRH, except fees in the amount of $539 incurred after the order for relief was entered, are authorized under § 503(b)(3)(A) and (b)(4) and are reasonable. The total administrative expense claim allowed for SMRH under this section is $13,568.00.

As indicated by the Court at the February 27, 2018 hearing, the Court is unable to determine from the information provided if some of the fees requested by Nagler were incurred in connection with the filing of the involuntary petition, or related to other tasks such as the receivership proceedings. In addition, multiple time entries were redacted. Counsel for JDL indicated that he would have Nagler generate unredacted time records so that the Court could evaluate and render a determination. JDL's Supplemental Memorandum did not provide any additional information regarding these entries. The burden is on the applicant to establish an administrative expense claim. This burden has not been met for multiple time entries. Specifically, the Court disallows fees where the description is redacted to the point that the Court cannot sufficiently evaluate, or an insufficient description is provided. Many entries also have a description that merely states "telephone call" or "conference call" but fails to provide any information as to the subject of the call. The entries that are inadequate are as follows:

January 22, 2014: $288

January 24, 2014: $30

| Date | Amount |
|---|---|
| January 28, 2014: | $90 |
| January 29, 2014: | $252 |
| January 29, 2014: | $150 |
| February 5, 2014: | $42 |
| February 6, 2014: | $84 |
| February 11, 2014: | $108 |
| February 14, 2014: | $30 |
| February 18, 2014: | $60 |
| February 19, 2014: | $60 |
| February 25, 2014: | $30 |
| February 28, 2014: | $360 |
| March 3, 2014: | $36 |
| March 4, 2014: | $630 |
| March 5, 2014: | $300 |
| March 6, 2014: | $30 |
| March 7, 2014: | $180 |
| March 18, 2014: | $150 |
| March 26, 2014: | $60 |
| TOTAL: | $2,970 |

Applicant's burden has not been met as to the above entries and the Court will disallow such fees. Accordingly, the total administrative expense claim allowed for Nagler under § 503(b)(3)(A) and (b)(4) is $10,850.

The Court has also reviewed Bailey's time records in detail. The Court finds that all fees set forth in Section A are allowed under § 503(b)(3)(A) and (b)(4) other than $100 for services provided on April 4, 2014, and $150 for services provided on April 22, 2014. From the information provided it does not appear that such services related to the filing of the involuntary petition. Bailey is allowed an administrative expense claim under these sections of $4,419.50.

Based on the foregoing, the Court will allow total fees and costs pursuant to § 503(b)(3)(A) and (b)(4) in the amount of $28,837.50.

B. Section 503(b)(3)(B)

Section 503(b)(3)(B) requires a creditor obtain court approval, and then subsequently recover property for the benefit of the estate. In re Maqsoudi, 566 B.R. 40, 43 (Bankr. C.D. Cal. 2017). This section was included to provide a statutory basis for a court to approve actions by a creditor, instead of a trustee, to recover property transferred or concealed by the debtor. Sanner v. Poli (In re Poli), 298 B.R. 557, 568 (Bankr. E.D. Va. 2003). There is no dispute here that JDL did not obtain Court approval to assist in pursuing the fraudulent transfer claim. JDL relies on In re Autosport Int'l, Inc., No. 2:12-bk-5800-RK, 2013 WL 3199826 (Bankr. C.D. Cal. June 24, 2014), to support its argument that retroactive approval may be granted in "appropriate circumstances." Even if the Court applied this test, JDL has not argued or established the test for retroactive approval: (1) a satisfactory explanation for the failure to obtain prior court approval; and (2) that services significantly benefitted the bankruptcy estate. Autosport Int'l, 2013 WL 3199826, at *6.

Additionally, to be entitled to an administrative fee expense under § 503(b)(3)(B), the *creditor* must have been the party that recovered the transfer, and not merely the *assisting* party. See Maqsoudi, 566 B.R. at 43 (creditor was not entitled to an administrative expense

claim under § 503(b)(3)(B) because it was not the party that maintained the adversary proceeding for recovery of estate assets). The record is clear that the Trustee was the plaintiff in the adversary proceeding against Columbia Bank and the other defendants, not JDL. JDL has not established that it is entitled to an administrative expense claim under § 503(b)(3)(B) and (b)(4). Accordingly, none of JDL's fees and costs pursuant to § 503(b)(3)(B) and (b)(4) will be allowed.

C. Section 503(b)(3)(D)

JDL also seeks an administrative claim pursuant to § 503(b)(3)(D). Whether expenses are authorized to JDL under this section depends on the resolution of the following three issues. First, does § 503(b)(3)(D)'s specific references to Chapters 9 and 11 create a *per se* bar to reimbursement for substantial contribution to a creditor in other chapters including Chapter 7? Second, if not, has JDL established that it made a "substantial contribution" to this Chapter 7 case? Third, if so, what is the reasonable amount of fees for this substantial contribution pursuant to § 503(b)(4)? For the reasons set forth below, this Court answers the first two questions affirmatively.

Section 503(b)(3) allows the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by –

> (D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title.

Several courts conclude that § 503(b)(3)(D)'s specific references to Chapters 9 and 11 create the negative implication that such substantial contribution claims are not allowed in Chapter 7 cases. See, e.g., In re Lloyd Sec., Inc., 75 F.3d 853, 857 (3rd Cir. 1996); Lebron v. Mechem Fin. Inc., 27 F.3d 937, 945 (3rd Cir. 1994); United Educ. & Software, 2005 WL

MEMORANDUM DECISION - 12
Case 14-40595-MJH    Doc 167    Filed 04/03/18    Ent. 04/03/18 13:22:57    Pg. 12 of 19

6960237, at *5-7; In re Morad, 328 B.R. 264, 272-73 (1st Cir. BAP 2005).  But see Connolly, 802 F.3d at 819; Health Trio, 2018 WL 539817, at *9; Maqsoudi, 566 B.R. at 43; Sharkey, 2017 WL 5476486 at *7-9 (affirming an award of administrative expenses to a creditor under § 503(b)(3)(D) in a Chapter 13 case).  While the Ninth Circuit Court of Appeals ("Ninth Circuit") has not ruled on the specific issue pending before this Court, it did reject the use of the doctrine of *expressio unius est exclusio alterius* relied on by several courts, including the Ninth Circuit Bankruptcy Appellate Panel ("BAP") in the unpublished decision, United Educ. & Software, 2005 WL 6960237, at *4, in holding that interest should be included as part of a tax administrative claim though interest was not included in the specific types of items referenced in connection with tax claims allowed as administrative claims under § 503(b)(1)(B) and (C).  In re Mark Anthony, 886 F.2d at 1106.  The Mark Anthony panel reached this conclusion based upon the existence of the pre-Code U.S. Supreme Court decision, Nicholas v. United States, 384 U.S. 678 (1966), allowing interest on such claims, which the panel concluded had not been expressly abrogated by the enactment of the 1978 Bankruptcy Code.  In so doing, the Ninth Circuit noted generally that "[e]specially in light of this unambiguous general directive, we conclude that the administrative expense statute's use of 'including' renders the *expressio unius* rule inapplicable to section 503."  Mark Anthony, 886 F.2d at 1106.  While the current case does not fall squarely within the specific holding of the Mark Anthony case, as there does not appear to be any circuit or pre-Code law specifically supporting the allowance of a Chapter 7 substantial contribution claim, this Court agrees with the general proposition of the Ninth Circuit's reasoning in that case: the list of expenses is not restrictive, and absent a clear intention to disallow a type of expense, such expenses should rise or fall based on the facts of the case and other guiding caselaw. See infra discussion pp. 5-7.

The Sixth Circuit Court of Appeals ("Sixth Circuit") in Connolly similarly recently reached this conclusion in holding that an interpretation that limits the application of § 503(b)(3)(D) to only Chapters 9 and 11, negates the term "including" that appears at the beginning of § 503(b). "[B]y using the term 'including' in the opening lines of the subsection, Congress built a mechanism into § 503(b) for bankruptcy courts to reimburse expenses not specifically mentioned in § 503(b)'s subsections." Connolly, 802 F.3d at 816. Furthermore, there is nothing in the Code specifically excluding such administrative claims in a Chapter 7. The use of the term "including" indicates an intent that the categories listed in the statute not be exhaustive and that the terms be flexible and adaptable to the unique circumstances of each case. In addition, the legislative history of this section indicates that Congress's intent in enacting subsection (b)(3)(D) was to resolve a problem that was occurring in Chapters 9 and 11, not to exclude the allowance of such fees in the rare Chapter 7 case to which it would be applicable. Further, Congress could have specifically stated that such claims are never allowed in Chapter 7, 12 or 13, but it did not. In re Connolly, 802 F.3d at 816; see infra discussion re: 2005 Amendments p. 6.

The purpose of § 503(b)(3)(D) is to encourage creditors in whatever chapter a bankruptcy case is filed to "substantially contribute" to the estate by pursuing funds that will be available for distribution to claimants. If the particular facts of a case warrant reimbursement, the court should have the ability to fashion a remedy that will foster rather than hinder such actions for the benefit of the estate. While it is true, that in cases where there is a trustee, the allowance of such claims will be rare and such allowed substantial contribution claims should be limited to avoid overlap and duplication of efforts with those of the trustee, there are cases where for any number of reasons a creditor may still provide a "substantial contribution."

This is one of those rare such cases. The Trustee acknowledged at the hearing on the motion to allow JDL's administrative claim that based on his sound business judgment he did not have sufficient resources to pursue the fraudulent action on an hourly basis, that despite diligent efforts he had been unable to induce several counsel he approached to take the matter on a contingency basis, and had been unable to reach a settlement with the transferee, Columbia Bank, prior to the filing of a fraudulent transfer lawsuit. Under the facts of this case, it is clear JDL's actions were necessary and instrumental in moving that action forward. It is also undisputed that JDL's actions significantly benefitted the Chapter 7 estate. JDL expended significant resources in obtaining documents, locating and interviewing counsel, and convincing such counsel to pursue the claims on a contingency basis.[3] The fraudulent transfer action resulted in a compromise with Columbia Bank and other defendants and recovery for the estate in the amount of $200,000. After payment of fees and costs, the net recovery to the estate was $130,830.57. Although these are not the only funds recovered, they do constitute the bulk of funds received, and it is undisputed that such funds would not have been available for distribution to creditors but for JDL's actions.[4] Based on the foregoing the Court concludes that JDL has demonstrated that it made a "substantial contribution" to the case for purposes of § 503(b)(3)(D). Under the unique facts of this case, where it is undisputed that a creditor provided a "substantial contribution" to the estate, the Court concludes that an administrative expense claim is proper under § 503(b)(3)(D).

---

[3] As noted earlier JDL's original administrative claim was in the amount of $111,857.50.

[4] Additionally, pursuant to the settlement reached, Columbia Bank agreed to not pursue any deficiency claims in the amount of $2,984,159.33.

The next issue is what amount of expenses should be allowed pursuant to § 503(b)(4). In its application, JDL originally sought allowance of a total administrative claim of $111,857.50, including $79,261.01 related to the fraudulent transfer claim. JDL subsequently agreed to limit its total administrative claim to $55,000. The Court has already concluded that $28,837.50 is allowed under § 503(b)(3)(A) and (b)(4) as costs incurred in connection with the involuntary petition. Now the Court must determine what additional amounts, if any, should be allowed under § 503(b)(3)(D) and § 503(b)(4).

The amount sought under § 503(b)(3)(D) includes copying costs of $6,748.01. This expense was paid by JDL out of pocket in order to scan documents produced by Columbia Bank in evaluating the fraudulent transfer claim and in convincing contingency counsel to represent the estate. The Trustee agrees that such expense resulted in a "substantial contribution" and should be allowed. The Court agrees, and the expense in the amount of $6,748.01 is allowed under § 503(b)(3)(D).[5]

As for what additional expenses should be allowed, although the Court commends JDL for its willingness to voluntarily reduce its claim in an effort to resolve this matter, it is still necessary for the Court to determine whether the fees and expenses sought, at even the reduced amount, are allowable under § 503(b)(3)(D) and (b)(4).

At the February 27, 2018 hearing, the Court indicated that the only fees it was inclined to allow under § 503(b)(3)(D) and (b)(4) were those related to retaining a law firm to pursue the fraudulent transfer claim on behalf of the estate and briefing such firm on the underlying facts to convince them to accept employment on a contingency basis. Fees incurred in investigating the underlying claims would not be allowed because of duplication of the Trustee's role.

---

[5] It is also possible that such claim may be allowable pursuant to Section 503(b)(1) as it clearly benefitted the estate.

MEMORANDUM DECISION - 16

Although the Court requested additional information from JDL to assist it in making this determination, the Supplemental Memorandum filed in response merely reiterated JDL's position that the "time spent developing the facts and the law" were an "integral part of inducing Williams Kastner to take the case." Supp. Memo. 1:20-21, 26, ECF No. 166. The problem with this argument is that it fails to address the Court's concern that such services are not allowable as duplicative of those of the Chapter 7 Trustee. "[C]laims for expenses under § 503(b)" are to "be strictly construed because 'they reduce the funds available for creditors and other claimaints.'" Connolly, 802 F.3d at 816 (quoting City of White Plains v. A&S Galleria Real Estate, Inc. (In re Federated Dep't Stores, Inc.), 270 F.3d 994, 1000 (6th Cir. 2001)). The Court takes an even stricter view of such claims in a Chapter 7 case, as a trustee is already appointed who has a statutory duty to investigate and pursue claims held by the estate where appropriate.

It is undisputed that the Trustee was made aware of the potential fraudulent transfer claim early on in the case and spent considerable time reviewing the allegations and attempting to negotiate a resolution with Columbia Bank. Investigating such claims was one of the Trustee's duties and obligations, and all parties concede that the Trustee fulfilled such obligation diligently and appropriately within his sound business judgement. When such negotiations failed to result in a settlement, the facts support that the Trustee had insufficient funds to take the next step and pursue such claims on an hourly basis. It is at this point that JDL made a substantial contribution to the estate. JDL actively interviewed law firms and was instrumental in locating a firm that was willing to pursue these claims on the Trustee's behalf. The estate retained such law firm and successfully pursued the litigation that resulted in a substantial recovery. It is the Court's position that fees related to such actions, including the expenses

incurred by JDL out of pocket for scanning documents, are the type of expenses that are reimbursable and allowable under § 503(b)(3)(D) and (b)(4).

As stated previously, the burden is on the applicant to establish that the expenses sought should be allowed as an administrative expense. Despite the Court's comments at the February 27, 2018 hearing, JDL did not provide any further breakdown of the expenses incurred to assist the Court in making this determination. Based on the Court's review of the time records previously submitted with the Application, the Court identified such expenses as incurred in interviewing and retaining counsel to prosecute the fraudulent transfer action on behalf of the estate and instructing such counsel on the claims and issues that comprise such claim. Any fees incurred in such litigation after an order was entered approving the employment of Williams, Kastner & Gibbs, PLLC as special counsel on July 21, 2016, are not allowed under the facts of this case. Accordingly, the expenses that are allowed to SMRH under § 503(b)(3)(D) and (b)(4) are those coded on SMRH's time record as a two (as related to the fraudulent transfer claim), starting with the entry dated July 22, 2015, and ending with the entry on July 8, 2016. Such expenses total $6,748.01. Application, Ex. A 2-3, ECF No. 156-1. For Bailey, the expenses that are allowed under these Sections are those listed on his time record under Section "B – Fraudulent Transfer Claim" starting with the entry dated August 18, 2015, and ending with the entry on July 21, 2016. Such expenses total $4,021. Application, Ex. C 3-5, ECF No. 156-3. In summary, the Court determines that the following expenses will be allowed under § 503(b)(3)(D) and (b)(4):

JDL: $6,748.01

SMRH: $11,147

Bailey: $4,021

TOTAL:    $21,916.01

Accordingly, JDL is allowed a claim of $28,837.50 under § 503(b)(3)(A) and (b)(4) and $21,916.01 under § 503(b)(3)(D) and (b)(4) for a total administrative expense claim of $50,753.51.

/ / / End of Memorandum Decision / / /